## AUGUST TERM, 1795.

### JOHN SMITH v. NATHANIEL EVANS.

*In Chancery.*

This suit was brought in the supreme court for the district of Kentucky, and on the erection of the district into the state of Kentucky, removed to the court of appeals.

Reuben Guthrie, on the 20th day of December, in the year 1779, obtained from the commissioners a certificate for a settlement and pre-emption, in the following words, to-wit:

"Reuben Guthrie, who was assignee of Thomas Hartgrove, this day claimed a settlement and pre-emption to a tract of land lying on the waters of Boone's creek, joining below a survey, made for the said Logan, of 200 acres, in the year 1775, by the said Hartgrove's residing at this place (Boonesborough), twelve months before the year 1778. Satisfactory proof being made to the court, they are of opinion that the said Guthrie has a right to a settlement of 400 acres, including the above location, and the pre-emption of 1,000 acres adjoining, and that a certificate issue accordingly."

And on the 18th day of February, in the year 1780, moved the location of the same, by an entry made in the commissioners' books, in the following words, to-wit:

"Reuben Guthrie moves, to move a location granted at Boonesborough, as assignee of Thomas Hartgrove. Sufficient cause appearing for the same, it is granted him, lying about a quarter of a mile below Bunton's lick logs, on the waters of Salt river, and running over the creek on both sides for quantity. Ordered, that a certificate issue accordingly."

And on the 26th day of February, in the same year, entered his certificate for settlement with the county surveyor, in the following words, to-wit:

"Reuben Guthrie, assignee of Thomas Hartgrove, entered 400 acres in Kentucky, by virtue of a certificate, etc., lying about a quarter of a mile below Bunton's lick logs, on the waters of Salt river, and running down the creek on both sides for quantity."

And having sold and assigned the same to the complainant, who caused the same to be surveyed in the manner described on the connected plat, and obtained a patent.

William White, as heir-at-law of Charles White, deceased, on the 15th day of February, in the year 1780, obtained from the commissioners a certificate for a settlement and pre-emption, in the following words, to-wit:

"It being proved to the court that William White, heir-at-law to Charles White, deceased, was entitled to a settlement and pre-emption, by the said decedent's raising a crop of corn in the country in the year 1776, the 1st of November, 1779; now comes into court and locates the same, lying on Hardin's creek, at the mouth of the south fork, and to run down for quantity, adjoining Bunton's camp, or Penix's land, on the west, and that a certificate issue accordingly."

And on the 24th day of February, in the same year, entered

Smith *v.* Evans.

his certificate for settlement with the county surveyor, in the following words, to-wit:

" William White, heir-at-law to Charles White, deceased, enters 400 acres in Kentucky, by virtue of a certificate, etc., lying on Hardin's creek, at the mouth of south fork, and to run down for quantity, adjoining Bunton's camp, or Penix's land, on the west."

And having assigned the pre-emption right to the defendant, he obtained a pre-emption warrant, and on the —— day of —— entered 500 acres, part of the said pre-emption, in the following words, to-wit:

" Nathaniel Evans, assignee of William White, enters 500 acres upon a pre-emption warrant, on Hardin's creek, to adjoin his settlement that begins at the mouth of the south fork of said creek, on the west, and to run westwardly for quantity."

And the other 500 acres on the same day, in the following words, to-wit:

. " Also 500 acres on the east, and to run eastwardly for quantity."

And the said settlement and pre-emption being surveyed in the manner described on the connected plat, patents issued of earlier date than the complainant's.

The complainant prayed the defendant might be compelled to convey the interference.

The annexed connected plat, No. 28, was returned in this cause, of which the following is an explanation:

*№28*

A B C D E, defendant's settlement, as the plaintiff says, according to entry. F G H I K C, 500 acres of the pre-emption do. 1 2 3 4 5, the complainant's settlement of 400 acres, according to survey, beginning at figure 1, a quarter of a mile below what is called Bunton's lick log. L M N O, defendant's settlement, according to survey. N P R S T V, 500 acres of his pre-emption do. on the lower side of the settlement. U W X Y, the other 500 acres of defendant's settlement on the upper side. 6 7 8 9, Penix's survey of 400 acres. B L, Bunton's lick log. The course of the branch entering into Hardin's creek at A is south 55 east. The course of the Meat-house branch, from the mouth, is south 12 degrees west. From A to the mouth of the Meat-house branch, on a direct line, is 707 poles. 10 to 11, Hardin's creek. 12 to 13, Meat-house branch. Po, Penix's improvement.

The following certificate of James Penix was read in evidence, to-wit:

"February 15, 1780. James Penix this day claimed a pre-emption of 400 acres of land, at the state price, in the district of Kentucky, on account of making an actual settlement in the year 1778, lying on the south fork of Hardin's creek, waters of the Beech fork of Salt river, about one mile above the mouth, and to run up the said creek for quantity. Satisfactory proof being made to the court, they are of opinion that the said Penix has a right to a pre-emption of 400 acres of land, to include the above location, and that a certificate issue accordingly."

The following is a summary of the testimony:

James McCullough deposed, that he was, some time in the year 1778, hunting on Hardin's creek, with Thomas Denton; that they continued several weeks at a station camp, near to a buffalo trace leading from what was then called the Shawnee licks, but since called the Indian licks, to Pleasant run lick; at which camp they erected a hut, for saving their meat, about two miles above Bunton's lick logs. That on the south side of the said creek, a short distance below, perhaps a quarter of a mile, a branch made in, which they then called a south fork of Hardin's creek. That in the spring of 1779 he was on the said creek, with the charge of some horses, and encamped at Bunton's lick logs, about a quarter of a mile below which another branch made in, which he then called the south fork.

James Penix deposed, that he made an improvement, about ten or eleven years age, on Hardin's creek, on what was then called

the south fork, about a mile up the said fork, and about a mile and a half from Bunton's lick logs. That the said south fork empties into Hardin's creek, a little above Bunton's lick logs, which improvement is at the place described on the connected plat, Po.

Patrick Doran deposed, that he was acquainted, in the year 1780, with a branch which made into Hardin's creek, below Charles Ewing's about a quarter of a mile. That he built a meat-house on said branch, and it has since been called by the name of the Meat-house branch; and, before, he never knew it called by any name, but a branch of Hardin's creek.

Thomas Denton deposed, that during the time of the sitting of the commissioners at Harrodsburg, Andrew Johnston, who had married the widow of Charles White, applied to him for a location to lay the settlement and pre-emption on, and asked him if it could not be laid on Hardin's creek. That he informed him there were many cabins low down on Hardin's creek, but that if he laid it at the mouth of the first south fork below his meat-house, and to run down on both sides of the creek, it might be obtained. That he went with Johnston before the commissioners, and heard him give in his location agreeably to the above description, but whether the clerk wrote it exactly so, he can not tell, as he did not hear it read. The meat-house he alluded to was on Hardin's creek, above the mouth of the south fork, and above Bunton's lick logs.

William Crow deposed, that he had been acquainted with the forks of Hardin's creek ever since the year 1776, at which time William Fields and himself made improvements on each fork, and below the forks. That the forks are about two miles, or two miles and a half above the mouth of the Meat-house branch, or where Charles Ewing now lives, on a straight line. He never heard any other place called the forks of Hardin's creek.

James Little deposed, that Thomas Denton showed him Bunton's lick log, and told him Bunton had no other in the country. It is about one-quarter of a mile above where Charles Ewing lives, and it is a quarter, also, from the lick log to the complainant's beginning.

William Fields' deposition was the same as Crow's.

Mark Hardin deposed, that he was well acquainted with Hardin's creek in the year 1775; that the place that he and his companions called the south fork of that creek, at that time, is where an old buffalo road crossed, just above the mouth of the said fork, and run up the said fork by the Indian lick, and the said fork empties

into the creek about two or two and a half miles above where Charles Ewing lives.

HUGHES for complainant.—The claims, both of the complainant and defendant, are village rights, but the defendant's is the eldest patent. Therefore, it will be necessary for the complainant to show, not only that he has a right to the land in dispute, but that the defendant has none. The calls of Guthrie's certificate and entry are to begin one-quarter of a mile below Bunton's lick log, and to run down the creek on both sides for quantity. These he has complied with in making his survey. The defendant has not surveyed agreeably to his location, and if he had done so, he would not have interfered with the claim of the complainant.

The principal call in the certificate of White, and the entry of the settlement with the surveyor, is the mouth of the south fork of Hardin's creek. This is fixed by Crow and Fields to be two miles, or two miles and a half, above the mouth of the Meat-house branch, the situation of which is fixed by Doran.

And the testimony of Crow and Fields is strengthened by the deposition of Denton. These witnesses speak of the fork designated on the plat A, so does Mark Hardin. McCullough, indeed, called the Meat-house branch, and the fork at A, both south forks at different times; and, strictly speaking, the fork at A is the south fork, and the Meat-house branch is also a south fork.

But, if there was a doubt as to the south fork meant by White, it is explained by the call to run down the creek and to adjoin Bunton's camp, or Penix's land, for these objects are to be found down the creek, from the fork at A. I therefore contend, the complainant having, by his survey, covered the land called for by his certificate and entry, and the defendant not having done so, that the complainant is entitled to a conveyance.

NICHOLAS for the defendant.—The certificate, under which the complainant claims, is granted for twelve months' residence, which is not a legal foundation for such a claim. I think Mr. Hughes is mistaken when he says the defendant would not have caused any interference if he had surveyed properly. An improper name, when proved to have been in use, may support an entry calling for it by that name, but proof of that improper name having been used by some can not defeat any entry calling for another place by the same name when that name is proper. This is our case, White calls to lie at the mouth of the south fork, and to run down adjoining Bunton's camp, or Penix's

land on the west. The Meat-house branch, as Doran calls it, is the south fork. McCullough knew it by that name, and it is called for by Penix by that name, and the true situation of Penix is fixed by his improvement, which is at Po.

It is evident White meant to lie on the same side, both of Bunton's lick logs, and Penix. Place Penix above and White will be to the west of him and to the east of Bunton's lick log; but place Penix below, and agreeable to his certificate and improvement, and White may be to the west of both. The only error in the defendant's survey is, his going too high up, but this is in the complainant's favor, because it makes the interference less, and as he would have taken as much land, and more, by surveying right, he has done the complainant no injury, and shall hold it.

The following decree was pronounced :

BY THE COURT.—Both the complainant and defendant claim under certificates granted to villagers. Therefore, as the defendant's certificate is the eldest, the first question will be, has he surveyed his settlement and pre-emption agreeably to their locations with the commissioners and surveyor ? From the testimony of William Fields, William Crow and Mark Hardin, it appears that the fork of Hardin's creek, which was most generally called the south fork thereof, is about two miles and a half or three miles above Bunton's lick logs. Therefore, the court is of opinion, that although other branches of that water course were, by some, called south forks, yet, as the defendant called for the south fork, and to run down the stream toward objects which lie below what was generally called so, there can be no doubt but he ought to have began the survey of his settlement at that place; and then, from an inspection of the surveyor's report, it is evident, that if he had, in a reasonable manner, surveyed his settlement, and the part of his pre-emption which he located to adjoin it on the west, he would not have interfered with any part of the complainant's survey. But as the defendant has obtained the oldest patent for the land in contest, it will be necessary to inquire how the complainant's settlement should have been surveyed agreeably to his locations. On which, the court is of opinion, that the complainant ought to have surveyed his settlement in a square, so that the upper line thereof would have crossed Hardin's creek a quarter of a mile below Bunton's lick logs (which appears to have been well known to those who were conversant in that part of the country), and at right angles to the general course of the creek, and

then to have extended down the creek so as to include half thereof on each side of the said general course. Whereupon, it is decreed and ordered, that the complainant do recover from the defendant all the land included in his settlement when thus laid off, and for which the defendant has obtained a patent as aforesaid. And it is further decreed and ordered, that John Helm, surveyor of Washington county, do go on the land in controversy, on the ——— day of ————— next, if fair, if not then on the next fair day, and there lay off, circumscribe and mark, by certain metes and bounds, the lands aforesaid agreeably to the above decree, and make report thereof to the twenty-fourth day of the next term, and the direction as to the costs is reserved until the coming in of the said report.